UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK DIBLASI,
    *Plaintiff*,

v.

SMITH & NEPHEW, INC. and HEREAUS, INC.,
    *Defendants*.

No. 3:20cv566 (MPS)

**RULING ON MOTION TO DISMISS**

Frank DiBlasi brings this product liability action under Conn. Gen. Statutes § 52-572m, *et seq*. against Smith & Nephew, Inc. alleging that its artificial knee joint was defective, and against Hereaus, Inc., a component supplier. Smith & Nephew moves to dismiss the complaint for failure to state a claim under Fed. R. Civ. R. 12(b)(6).[1] (ECF No. 20.) For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

The following facts are drawn from DiBlasi's amended complaint, ECF No. 16, and are accepted as true for the purpose of this motion.

Smith & Nephew is engaged in the manufacture, sale, and distribution of artificial knee joints used in knee replacement procedures. ECF No. 16 at ¶ 3. Heraeus manufactures the cement used with Smith & Nephew's knee joints. *Id.* at ¶ 5. In 2014, DiBlasi underwent total knee replacement surgery in which a knee joint manufactured by Smith & Nephew was implanted. *Id.* at ¶¶ 7 - 8. In 2018, DiBlasi noticed a prominent, firm object under the skin of his right knee causing clicking and pain. *Id.* at ¶ 11. His surgeon determined that DiBlasi had a "loosening of

---

[1] The Court also considered Smith & Nephew's prior brief, ECF No. 13, which the defendant incorporates by reference, and its supplemental memorandum. ECF No. 21.

his patella femoral component." *Id.* at ¶ 12. DiBlasi subsequently was diagnosed with "right knee prosthetic MRSA infection of the right knee." *Id.* at ¶ 13. He underwent a total knee excision of the infected implant, irrigation, and debridement, and revision with temporary prosthesis. *Id*. at ¶ 14. About a month later, he underwent a second total knee replacement, removing the temporary prosthesis. *Id.* at ¶ 15.

Smith & Nephew advertises that its knee replacement implants last longer than other similar devices. *Id.* at ¶ 19. Its knee replacement implants are made with oxidized zirconium rather than cobalt or titanium, which are more commonly used in such replacement devices.[2] *Id*. at ¶ 20. The FDA recalled thousands of Smith & Nephew defective knee joints.[3] *Id.* at ¶ 25. After the recall, Smith & Nephew continued to misrepresent the fitness of its knee joints and failed to warn prospective end users. *Id.* at ¶ 26.

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for*

---

[2] Smith & Nephew contests this allegation, asserting that "the only oxidized zirconium component implanted in Plaintiff is the femoral component" and the complaint does not allege that that particular component is defective. ECF No. 20 at 3. However, at this stage of proceedings, it is not appropriate to contest the accuracy of the allegations.

[3] The complaint provides no details about the recall and does not allege that the particular prosthesis implanted in the plaintiff was recalled.

*Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

### III. DISCUSSION

The Connecticut Products Liability Act, Conn. Gen. Stat. § 52-572m, *et seq.*, is the "exclusive remedy for all product liability claims in Connecticut." *Greco v. Broan-NuTone LLC*, No. 3:17cv953(SRU), 2020 WL 1044002, at *9 (D. Conn. Mar. 4, 2020). "The statute does not abolish common law claims in product liability actions, but instead incorporates them into a single count to simplify pleadings." *Collazo v. Nutribullet*, 473 F. Supp. 3d 49, 51 (D. Conn. 2020). "[A]ny sub-claim brought under the CPLA, such as negligence, strict liability, or breach of warranty, must sufficiently allege all elements that would be required at common law." *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.,* No. 3:18cv217(CSH), 2020 WL 705263, at *3 (D. Conn. Feb. 12, 2020).

#### A. Strict Liability

Smith & Nephew argues that the complaint should be dismissed because DiBlasi fails to allege sufficient factual allegations to support his claim that its product is defective. ECF No. 21 at 2 ("He does not plead any facts.")

"To state a claim based on strict liability, a plaintiff must plausibly allege that the product designed, manufactured or sold by the defendant was defective and that the defect proximately caused the plaintiff's injuries." *Philadelphia Indem. Ins. Co.*, 2020 WL 705263, at *3. "A product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions." *Id.* Product liability claims, "whether alleging a design

3

defect, manufacturing defect or failure to warn defect, are governed by the [following] elements . . . : (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Bifolck v. Philip Morris, Inc*., 324 Conn. 402, 434 (2016). "Even under the liberal pleading standards of Rule 8, a complaint generally must identify a specific problem with the design or manufacturing of the subject products." *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18cv217(CSH), 2019 WL 1258918, at *4 (D. Conn. Mar. 18, 2019).

Design Defect

"[A] design defect claim is predicated on a product which is otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury." *Leonard v. Gen. Motors LLC*, No. 3:19cv1682(SRU), 2020 WL 7024906, at *13 (D. Conn. Nov. 30, 2020) (citation and internal quotation marks omitted). "A product is defectively designed if: (1) it failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner (the "ordinary consumer expectations" test); or (2) in the case of complex products, the risk of danger inherent in the design of the product outweighs its utility (the "modified consumer expectations" test)." *Moss v. Wyeth Inc.*, 872 F. Supp. 2d 162, 166 (D. Conn. 2012).

Smith & Nephew argues that DiBlasi fails to allege a design defect claim under either the consumer expectations test or the risk utility test. ECF No. 21 at 2.

Admittedly, DiBlasi's pleading is sparse. But when the facts alleged are viewed in the light most favorable to him, he alleges a specific defect - that the patellar component of the defendant's

4

knee implant loosened, causing a visible bulge in his knee and pain, and necessitating the removal of the prosthesis – from which the Court reasonably can infer that the prosthesis "failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner." *Moss,* 872 F. Supp. 2d at 166. This is sufficient to state a claim at this stage. *See Leonard*, 2020 WL 7024906, at *13 (plaintiff's allegations that the vehicle's airbags failed to deploy and the seat belt failed to prevent him from hitting his head on the steering wheel upon impact "adequately establish[] that the airbag and seat belt systems failed to perform as safely as a consumer ordinarily would expect under the consumer expectation test," stating "a colorable design defect claim"); *Mals v. Smith & Nephew, Inc.*, No. 3:19cv1770(VLB), 2020 WL 3270835, at *3 (D. Conn. June 17, 2020) (allegation that the "unicondylar poly insert failed causing an anterior translation of the plastic prosthesis" sufficiently stated a plausible design defect claim). The motion to dismiss the design defect claim is denied.

    Failure to Warn

DiBlasi alleges that Smith & Nephew "failed to warn or instruct that the product in question was dangerous . . . ." ECF No. 16 at 27(b).

"Strict liability applies to failure to warn claims where adequate warnings or instructions were not provided and where the harm suffered would not have occurred had adequate warnings been given**.**" *Karazin v. Wright Med. Tech., Inc*., No. 3:17cv823(JBA), 2018 WL 4398250, at *5 (D. Conn. Sept. 14, 2018).

Smith & Nephew argues that this claim fails because it is conclusory. ECF No. 13-1 at 9-10. I agree. The complaint alleges only that the defendant: "knew" its knee joints are "inferior" but did not warn consumers, ECF No. 16 at ¶ 21; misrepresented the fitness of its knee joints and failed to warn consumers, ECF No. 16 at ¶ 26; failed to warn Plaintiff that "the products were

5

dangerous and subject to instanteous shattering,"[4] ECF No. 16 at 27(b); and failed to "disclose … the dangerous propensities of the product[]." ECF No. 16 at ¶ 27(e).  These are all conclusory assertions.  There are no facts alleged as to any warnings Smith & Nephew did provide and how there were allegedly deficient.  *See Leonard*, 2020 WL 7024906, at *15 (failure to warn claim insufficient where plaintiff "failed to offer any specific factual allegations concerning the warnings he did receive and how they were deficient); *Philadelphia Indem. Ins. Co.*, 2019 WL 1258918, at *3 (failure to warn claim insufficient where plaintiff made only conclusory assertion that defendant had failed to provide adequate and sufficient warnings regarding blower motor  without alleging whether the motor was accompanied by any warnings or instructions, without alleging the content of any warnings, and without alleging why the content was inadequate).  The motion to dismiss is granted as to the failure to warn claim.

B.      Negligence

DiBlasi alleges that Smith & Nephew was negligent because it failed to properly test the product; designed the product in a defective manner; knew or should have known of the product's dangerous characteristics yet continued to manufacture it; and used improper materials in the manufacture of the device.  ECF No. 16 at ¶ 27(f).

"Under Connecticut law, the elements of a cause of action for negligence are duty, breach of that duty, causation, and actual injury."  *Philadelphia Indem. Ins. Co*., 2020 WL 705263, at *6.  *See Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 592 (D. Conn. 1993) (the requirements applicable to ordinary negligence actions "are also applicable to negligence claims against product manufacturers" under Connecticut's Product Liability Act).

---

[4] Smith & Nephew pointed out in its initial motion to dismiss that there are no allegations that the prosthesis shattered.  ECF No. 13-1 at 9.  The allegation, however, remains in the amended complaint that DiBlasi subsequently filed.

6

As to the claim that Smith & Nephew failed to properly test the prosthesis prior to marketing it, ECF No. 16 at ¶ 27(f), the only allegations concerning testing are that the defendant was not required to conduct clinical studies but only had to demonstrate that its device was substantially similar to those already in the market and that the "product goes into a patient's knee and is not properly tested." ECF No. 16 at ¶¶ 23 - 24. This is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 (A "naked assertion" devoid of "further factual enhancement" is insufficient to state a claim.)

DiBlasi's claims that Smith & Nephew negligently failed to properly design and/or properly manufacture the prosthesis also fall short. "Unlike strict liability, which focuses on the product itself and finds the manufacturer liable if the product is defective, negligence centers on the manufacturer's conduct." *Philadelphia Indem. Ins. Co. v. Lennox*, 3:18cv217(CSH), 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020)(internal quotation marks omitted). Although DiBlasi alleges that Smith & Nephew used oxidized zirconium rather than cobalt or titanium, he stops short of alleging how this rendered the prosthesis defective. DiBlasi has not alleged sufficient factual support for an inference that the alleged defective condition of the prosthesis was caused by Smith & Nephew's negligent acts or omissions.

C.    <u>Breach of Express Warranty</u>

The complaint also asserts a breach of express warranty claim. ECF No. 16 at ¶ 27(h). "A plaintiff asserting a claim for breach of express warranty must show: (1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach." *Philadelphia Indem. Ins. Co.*, 2020 WL 705263, at *7. "An express warranty is created when, among other things, the seller makes [a]ny affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id.* (quotation marks and citations omitted). Further,

"[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* (citations omitted).

DiBlasi alleges that Smith & Nephew breached "express warranties that the products were safe and effective for [their] intended use." ECF No. 16 at ¶ 27(h). This is conclusory and insufficient to state a plausible claim for breach of express warranty. *See Leonard,* 2020 WL 7024906, at *16 (plaintiff's allegation that defendants claimed that the car's airbag and seat belt system "was safe and would operate and protect" him failed to a state a plausible claim for breach of express warranty); *Philadelphia Indem. Ins. Co.,* 2020 WL 705263, at *7 (allegation that defendants "breach[ed] the express and/or implied warranties that the subject [furnace and blower motor] would be free from defects, merchantable and safe to use for [their] general and intended purposes" was not enough to state a breach of express warranty claim); *Simoneau v. Stryker Corp.,* No. 3:13cv1200(JCH), 2014 WL 1289426, at *14 (D. Conn. Mar. 31, 2014) (dismissing breach of express warranty claim where "[t]he underlying warranty of safety and effectiveness . . . is not specifically pled, nor is the identity of the party to whom it was made as part of the basis of the bargain.")

D.  <u>Implied Breach of Warranty of Merchantability</u>

DiBlasi alleges that Smith & Nephew "breached an implied warranty of merchantability in that said products were not of merchantable quality and for its intended purpose." ECF No. 16 at ¶ 27(g).

To state a claim for breach of the implied warranty of merchantability, "a party must plead that: 1) a merchant sold the goods; 2) the goods were defective and not merchantable at the time of sale; 3) injury occurred to the buyer or his property; 4) the injury was caused by the merchant's defective product; and 5) notice was given to the seller of the claimed breach." *Ferry v. Mead*

8

*Johnson & Co., LLC*, No. 3:20cv99(SRU), 2021 WL 243119, at *17 (D. Conn. Jan. 25, 2021) (citation omitted). DiBlasi's claim fails because he has not alleged that he ever notified Smith & Nephew of the alleged defect. *See Gallinari v. Kloth*, 148 F. Supp. 3d 202, 215 (D. Conn. 2015) (dismissing claim for breach of the implied warranty of merchantability when complaint did not allege that the plaintiff "notified Defendants of any claimed defect in the [product at issue]") (citing cases).

E. <u>Misrepresentation</u>

DiBlasi asserts a claim of misrepresentation. ECF No. 16 at ¶ 27(d) ("The defendants mispresented to Plaintiff and the general public that the products in questions were safe for use by the public.")

To state a claim for negligent misrepresentation, a plaintiff must establish "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, (3) that the plaintiff reasonably relied on the misrepresentation and thus (4) suffered pecuniary harm." *Ferry*, 2021 WL 243119, at *18. Although "[c]ourts disagree about whether the heightened pleading standard of Rule 9(b) applies to negligent misrepresentation claims[,]""courts agree that when 'negligent misrepresentation is couched in fraud-like terms of known falsity,' the heightened fraud pleading standard applies." *Id.* Here, the complaint alleges that Smith & Nephew "knew" their knee joints were "inferior" and that some of its products had been subject to a recall but continued to misrepresent the fitness of its knee joints. ECF No. 16 at ¶¶ 21, 25-26. Because DiBlasi alleges that Smith & Nephew was aware that its representations were false, I construe the claim to sound in fraud and subject to the heightened pleading standard of Rule 9(b). It fails to meet this standard because the complaint does not allege any particular statements,

9

identify a particular speaker, or state the particular time and place of the alleged misrepresentations.

IV.     CONCLUSION

For these reasons, Smith & Nephew's motion to dismiss (ECF No. 20) is granted as to the failure to warn, negligence, warranty, and misrepresentation claims and denied as to the strict liability design defect claim.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        February 17, 2021